IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
CLEVELAND DIVISION

| | | |
|---|---|---|
| Municipal Services of America Corp. | : | CASE NO |
| | : | |
|     Plaintiff | : | JUDGE |
| | : | |
| -vs- | : | COMPLAINT FOR MONETARY |
| | : | DAMAGES IN EXCESS OF $75,000.00 |
| CITY OF WICKLIFFE | : | AND INJUNCTIVE RELIEF |
| | : | |
|     Defendant | : | |

Now comes Plaintiff, Municipal Services of America, Inc., by and through counsel, and states the following as their cause of action in the above captioned matter

## PARTIES

1.  Plaintiff Municipal Services of America, Inc. (hereafter MSA) is an Ohio Corporation, duly registered with the Ohio Secretary of State having a primary place of business of _____

2.  Defendant City of Wickliffe is a Municipal Corporation having a primary address of 28730 Ridge Road, Wickliffe, OH 44092.

3.  Defendant Ray Sak is an employee of the City of Wickliffe holding the title of Commissioner of the Building Department for the City of Wickliffe

## FACTS COMMON TO ALL COUNTS

4.  That in order to perform numerous types of work in the City of Wickliffe (hereafter "City") prospective contractors are required to register with the City.

5.  That the registration requires a contractor to provide proof of insurance and bond and the payment of an annual fee.

1

6.  That upon presentation of insurance and bond documentation and the payment of the annual feel, a contractor is allowed to request which of the many subsets of contracting type they may be listed under.\

7.  That Municipal Services of America, (hereafter "MSA"), has been a registered contractor in the City for the past four (4) years.

8.  That in accordance with Wickliffe City Ordinance 1303.70, before title to a house may transfer, with enumerated exceptions, a Certificate of Occupancy must be issued.

9.  That before the Certificate of Occupancy may issue, a building for which title transfer is sought is subjected to numerous inspections, including but not limited to inspection of the sidewalks, driveways and the connection to the City Sewers.

10. That according the regulation the City requires "proof that the sewer piping on the property is in good condition and is reasonably free from infiltration."

11. That the regulation also requires proof that "the sidewalks and aprons within public right-of-way are in good repair and condition."

12. That every year upon registration, MSA requests to be listed under the "Sewers' subsection.

13. That on at least three (3) separate occasions, MSA has been removed from the Sewer list and /or not listed  under the Sewer contractor list despite in person requests for said listing which Plaintiff, by and through its owner Michael Marucci has repeatedly complained about.

14. That the City of Wickliffe in general and Ray Sack in particular was aware of the repeated issues of the incorrect listing for MSA, as evidenced by Mr. Sak making jokes

that MSA was listed as a carpenter and inquiring as to whether they received any calls for garages and additions.

15. That as part of the point of sale inspection, required in the City before a residence may be sold, a potential seller of a residence must pass a Sewer Dye Test, hereafter the "Test".

16. That the first portion of  the Test requires a homeowner to pay a contractor to locate and expose the Test Tee portion of their sewer system to allow the test to be conducted.

17. That on information and belief, the average charge for this service is $500.00.

18. That in the instance of a failing test, a potential seller will be required to replace one or more sewer lines leading from their house to the City sewer line.

19. That on information and belief, the average cost of repairs in the case of a failing Test is between $5000.00 and $15,000.00.

20. That, on information and belief, the lists kept by the City are to be provided to consumers to assist them in the selection of contractors to perform both the Test Tee location work and, if necessary, the repair work.

21. That on information and belief, the majority of consumers use the same contractor for the Test Tee location service and the repair work.

22. That on information and belief, the City, by and through defendant Ray Sak and the members of the City Building department have engaged in a pattern of behavior, extending over years, whereby the name of one contractor, Formica Plumbing, is given out to consumers / perspective customers seeking to have Test Tee location work done.

23. That the location of Test Tees does not require permitting by the City.

24. That on at least two occasions, Ray Sak has been recorded recommending Formica Plumbing as the only company to contact to perform Test Tee / Sewer Repair work related to the Sewer Dye Test.

25. That on information and belief, approximately Six Hundred (600) properties, including residential homes and commercial properties, are sold a year in the City.

26. That the point of sale inspection rules of the City of Wickliffe do not exempt commercial properties from the regulations regarding sewer system and concrete testing  / inspection.

27. That on information and belief, the majority of the Test Tee location work and Sewer Repair work has gone to Formica Plumbing.

28. That on information and belief, Formica Plumbing has not been listed under the Sewer contractor listing.

29. That on information and belief, when contacted with requests for additional information regarding contractors for  Test Tee Location and/or sewer repairs personnel for the City of Wickliffe give out the contact information for Formica Plumbing to the exclusion of other contractors.|

30. That on information and belief, potential customers are not informed that a list of registered contractors was available, either online or in hard copy at the City Building Department located at City Hall.

31. That in addition to the requirement of passing a Sewer Dye Test, residents of the City are subject to inspections of their sidewalks and driveways prior to sale of a property.

32. That on information and belief, in excess of 75% of potential sellers are required to have concrete repair performed in order to pass the Point of Sale Inspection.

33. That on information and belief, representatives of the City of Wickliffe, including but not limited to Ray Sak, have recommended Vanjo Construction as the only contractor to call for repair work when asked for information by potential consumers.

34. On information and belief, Vanjo Construction has a history of employing City employees in their concrete work.

35. That on information and belief, Vanjo Construction receives in excess of 90% of the concrete work in the City of Wickliffe.

36. That on information and belief, Vanjo construction has been referred to on several occasions, including but not limited to Ray Sak as the City's contractor for concrete work.

37. That the materials and equipment used in both concrete work, the location and uncovering of Test Tees and the repair of faulty sewer lines are part of interstate commerce.

38. That on information and belief, the fair competition for concrete work and sewer work in the City, including but not limited to the location of Test Tee's and repairing faults that cause the failure of the Sewer Dye Test, has been interfered with by the City

39. That in September of 2019, Plaintiff brought the issues with the removal from the list and the phone calls where Formica Plumbing was referred to perspective sellers to the attention of the City of Wickliffe.

40. That during the first week of October 2019, Plaintiff was advised to remove a sign from the front yard of a client's residence, being told that said sign was infringing on the City's right of way / was in violation of the City's temporary sign regulations.

41. That on information and belief, there were numerous signs on the same street, and throughout the City of Wickliffe at that time, including but not limited to political and business advertising signs, similarly located that were not removed and on information and belief, were not cited.

42. Wickliffe Ordinance 1161.05 governs the display of temporary signs.  It states as follows:

    (a)  <u>Temporary Signs in Zoning Districts.</u>
        (1)  <u>Placement of temporary signs.</u>
           A.  No sign shall be erected unless it is erected or placed at least ten feet within the front lot line in a Residential District. Provided, however, that in the event the topography, landscaping or the depth of the front yard prevents the effective display of the sign, the sign may be placed anywhere in the front yard. The placement of the sign shall not extend into the public right of way nor shall it obstruct the view of ingress and egress from adjoining properties.
           B.  No person shall place any temporary sign within the limits of the right of way of any public street, nor shall any person affix any temporary sign to any tree or pole within the right of way of any public street.
    (2)  <u>Removal and storage of unlawful temporary signs.</u> The Building Commissioner is directed to remove any temporary sign erected and maintained in the City contrary to the provisions of this chapter.

43.  That the "right of way" referred to in 1161.05 is not defined in this section.

44. That on information and belief, Plaintiff's sign was in compliance with the regulation.

45. That if Plaintiff's sign was not placed in accordance with 1161.05, there were at least one other sign that was not placed in accordance with the regulation  located on the same street that was not cited or caused to be removed.

46. That on information and belief, the actions of Ray Sack on behalf of the City of Wickliffe has been a course of continuing conduct since at least 2016.

47. That on information and belief, Ray Sack was suspended by the City of Wickliffe for making referrals to specific contractors, including those not identified on the City's Approved Contractor's list in 2019.

48. That on information and belief, the City issues a letter sometime in 2018 advising City employees against the practice of referring residents to specific contractors and/or endorsing specific contractors.

## JURISDICITON AND VENUE

49.  This case arises under the Due Process Clause of the Fifth and Fourteenth Amendments of Unites States Constitution and the Sherman Anti-Trust Act, 15 USC 1 et seq. and this Court has jurisdiction pursuant to 28 USC 1331.

50. This Court has the authority to grant declaratory and injunctive relieve pursuant to 28 USC 2201 and 2202 and its inherent equitable powers.

51. Venue is proper in this district court pursuant to 28 USC 1391(e)(1).

52. This Court has authority to enter an award of attorney fees under 42 USC 1988 and 14 USC 1, et seq.

## COUNT ONE

## VIOLATION OF DUE PROCESS

53. Plaintiff incorporates the allegations contained in Paragraphs 1-52 as fully rewritten herein.

54. That as one of the approved contractors identified on the list provided by the City of Wickliffe, MSA has a constitutionally protected business interest in the right to compete fairly and without inequitable government intervention for the provision of sewer work necessary to repair systems having failed the Sewer Dye Test required by the City of Wickliffe and the location of Test T's.

55. That on information and belief, the Test T location work has a total value in excess of $300,000.00 per year.

56. That on in information and belief, during an average year over six hundred properties require Test T location to be performed, and of those six hundred properties, more than fifty percent (50%) require substantial repair to the sewer system due to a failing grade on the Sewer Dye Test.

57. That on information and belief, of the 600 commercial and residential properties sold in the City during an average year, over fifty percent require independent concrete repairs to be performed, not including the additional concrete repairs that are regularly required as part of the sewer line work.

58. That only businesses identified on the Contractor's list maintained by the City of Wickliffe have the right to bid on and complete for Sewer Repair and/or Concrete repair work in the City of Wickliffe.

59. That representatives of the City of Wickliffe, including but not limited to Ray Sak, regularly and repeatedly failed to refer parties to the list to find a service provider, but instead provide only the information for Formica Plumbing for sewer work and/or Vanjo Construction for Concrete work and further laud the services of those companies..

60. That on information and belief, the City of Wickliffe does not monitor or track the calls requesting information on service providers for sewer repair work or concrete work.

61. That as a registered contractor, Municipal Services of America maintains a property right in the freedom to fairly compete for business in their respective fields, including  Test T location, sewer repair work and concrete repair work.

62. That this right has been violated by the circumvention of the fair opportunity to compete through the acts of the representatives of the City of Wickliffe in failing to inform potential consumers of the list of registered contractors and more specifically, through the favoritism shown to Formica Plumbing and Vanjo Construction.

## COUNT TWO

## TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS

63.  Plaintiff incorporates the allegations contained in Paragraphs 1-62 as fully rewritten herein

64. That by creating a list of approved contactors, which Plaintiff was required to register and expend funds for, the City of Wickliffe created recognizable economic expectancy in the work to be performed to allow for passage of the Sewer Dye Test.;

65. That the City of Wickliffe was aware of the economic expectancy and of the expectation of a right to fair competition by the members of the list.;

66. That the City of Wickliffe, by and through its employees, including but not limited to Ray Sak and others, as intentionally interfered with Plaintiffs economic expectancy by making direct referrals to a single contractor, Formica Plumbing for sewer work and Vanjo Construction for concrete repair without referring to individuals to the list of approved providers, promotion the "merits" of Formica and Vanjo as a service provider and failure to referrer parties calling for information to the online or hard copy list of contractors.

67. That Plaintiff's ability to successfully compete in the concrete and sewer repair markets by the failure of the City to place and maintain MSA's listing as a sewer contractor,

having repeatedly removed MSA from the Sewer list and classified them as a general contractor.

68. That after numerous complaints by Plaintiff about the list, the City changed the way in which the approved contractor list was structed, changing the list from one in which contractors are sorted primarily by work type to an alphabetical list where the type of work performed is just one of the information blocks on the list.

69. That as a direct and proximate result of these actions, according to Ray Sak, Formica plumbing does around "90%) of the sewer repair work related to the Sewer Dye Test in the City of Wickliffe.

70. That on information and belief, Vanjo construction performs in excess of 85% of the concrete repair work in the City.

71. That as a direct and proximate result of this interference, Plaintiff has lost the opportunity to bid on said work, resulting in losses in excess of $625,000.00 per annum.

COUNT THREE

Combination and conspiracy in unreasonable restraint of trade in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

72.  Plaintiff incorporates the allegations contained in Paragraphs 1-71 as fully rewritten herein

73. That the provision of concrete and sewer repair services necessitates the use of materials and equipment that consistently and regularly flow through interstate commerce throughout the United States and further affect issues such as banking, house financing and insurance claims, all of which include interstate commerce.

74. Plaintiff incorporates by reference as if fully set forth the allegations in all other paragraphs of this Complaint.

75. As described above, beginning at least as early as January 2016 and continuing through at least December 31, 2019, Defendants and their co-conspirators entered into a continuing agreement, understanding, combination and/or conspiracy in restraint of trade, resulting in harm both to competition generally and to Plaintiff specifically, in violation of Section 1 of the Sherman Act.

76.  The Defendants' refusal to provide information regarding all registered contractors for the provision of sewer and concrete services combined with the regular and repeated provision of two contractors, Formica Plumbing for sewer related work and Vanjo Construction for concrete work, constitutes a boycott, a collective refusal to deal and the exclusion of a competitor from the Relevant Market by Market Participants with market power, and thus a per se antitrust violation. In the alternative, the Defendants' refusal to provide prospective customers information with regards to Municipal Services of America or any other registered contractor constitutes an unreasonable restraint of trade.

77. That on information and belief, the profit margin for sewer repair work in in excess of 40% and can be as high as 60%.

78. That on information and belief, the average profit on a sewer repair job necessitated by a failing point of sale inspection is in excess of $6,000.00.

79. That on information and belief, in excess of 375 sewer repairs are performed each year as part of the Point of Sale Inspection process within the City of Wickliffe, resulting in an minimum average of $2,250,000.00 in profit per year.

80. That on information and belief, the Test T location service required as part of a City's Point of Sale inspection is worth in excess of $300,000.00 per year.

81. That on information and belief, the gross value of concrete repair work necessitated by the Point of Sale inspection process in in excess of $375,000.00.

82. That on information and belief, approximately 90% of this work is performed by Formica Plumbing (Sewer Work) and Vanjo Construction (concrete work).

83. Defendants' unlawful combination and conspiracy injured competition in the Relevant Market and proximately caused Municipal Services of America economic loss and damages by their refusal to provide information regarding its services to potential customers, to reference potential customers to the approved contractor list that Plaintiff paid an annual fee to be a part of and by providing preferential treatment to two contractors, Formica Plumbing and Vanjo Construction, for which it now seeks to recover.

84. That on information and belief, the illegal and anticompetitive actions of the City of Wickliffe, in the form of direct promotion of certain companies, failure to inform potential consumers of the availability of lists of contractors maintained by the City and/or the repeated and reasonless removal of Plaintiff from the Sewer contractor's list has caused Plaintiff economic harm and damages, said damages being in excess of $625,000.00 per year.

COUNT FOUR

FIRST AMENDMENT RETALIATION

42 USC 1983

85.  Plaintiff incorporates the allegations contained in Paragraphs 1-84 as fully rewritten herein

86. That over the past four years, Plaintiff, by and through its owner, Michael Marucci has complained about the practice of referrals and the issues with the failure to list his company under the "Sewer" section of the approved contractor list.

87. That on at least three separate occasions, Plaintiff has been removed from the "Sewer" list and placed on the general contractor list, a fact which was made light of by Mr. Sak when he joked that he had placed Mr. Marucci's company on the Carpenter's list..

88. That in 2019, Mr. Marucci again personally went to City Building Department at Wickliffe City Hall to complain about the improper listing. Over the years, Mr. Marucci has been given numerous explanations for the failure to maintain his listing, including but not limited to computer issues, reformatting of the list and lack of authority to make the change.

89. That during the 2019 trip, on information and belief, Mr. Marucci was changed back to a "Sewer" contractor by another employee while he was making his complaint.

90. That in 2019, for the first time, Mr. Marucci was informed that he would have to provide specific insurance information designating him as a sewer contractor, as opposed to insurance identifying him as a general contractor, in order to be listed on the "Sewer" list.

91. That on information and belief, Plaintiff is the only business for which this request has been made and there is no regulation identifying any specific insurance requirements to be listed on any subset of the list.

92. That all of these 2019 actions, including the forced removal of Plaintiff's sign were subsequent to Mr. Marucci presenting recordings of Defendant's Sak's referrals to Formica Plumbing.

93. That each of these actions were made in direct response to Mr. Maruccis exercise of his First Amendment protected right to question the policies and practices of the City of Wickliffe of the application of local policies regarding Point of Sale Inspections and the administration of the City's Contractor list.

94. That as a direct and proximate result of these actions, Plaintiff has suffered lost time, inconvenience and lost potential business due to repeatedly not being identified as a "Sewer" contractor.

95. That as a direct and proximate cause of Defendant's actions, Plaintiff has been damaged in an amount to be proven at trial, including but not limited to an award of reasonable attorney fees and the cost of the litigation in accordance with 42 USC 1988.

COUNT FIVE

DECLARATORY JUDGMENT

96.  Plaintiff incorporates the allegations contained in Paragraphs 1-95 as fully rewritten herein

97. Wickliffe City Ordinances 1161.05 and 1303.70 are void for vagueness under the Fourteenth Amendment to the United States Constitution.

98. 1303.70 is void for vagueness in that it fails to define the standard for what  "proof" of "good condition and free from infiltration" constitutes and what "good repair and condition" regarding concrete aprons and sidewalks in the City "right of way" constitutes.

99. 1303.70 is further void for vagueness in that the  "Sewer Dye Test" adopted by the City under the auspices of this statute does not have any written, objective and measurable standards for what constitutes a passing versus a failing test.

100.     Section 1161.05 is void for vagueness in that it does not identify what the grounds are for negating the city right of way standard and does not define what constitutes the "City Right of Way. "

101.     That the City has used the lack of specificity in these statutes to create an environment of selective enforcement where the identity of the inspector, the favor (or lack thereof) of the contractor and other subjective factors are used to determine whether the concrete and sewer lines receive a passing grade allowing title of a property to transfer.

102.     That on information and belief, this vagueness has resulted in a discriminatory effect against Plaintiff and property owners located in the City of Wickliffe where Plaintiff has performed work, causing unjustifiable failing test grades to be issued.

103.     That on information and belief, the City of Wickliffe receives additional revenue for each test performed.

104.     That on information and belief, the vagueness in Wickliffe Ordinance 1303.70 allows the city to require additional tests on otherwise acceptable properties, thus increasing the City's revenue stream

105.     That on information and belief, there is no subjective records of the performed tests kept by the City and there is no vehicle for appeal of any allegedly failing test, nor any objective standard against which to measure any appeal

106.    That on information and belief, the vagueness in 1161.05 allows the City, through its employees, and without a vehicle for appeal, to discriminate against businesses and other individuals using temporary signs to promote a business or viewpoint based solely on their lack of favor with the city, and has, on information and belief, resulted in numerous instances of selective enforcement.

107.    As such, Plaintiff respectfully requests that Wickliffe City Ordinance s1303.70 and 1161.05 be declared unconstitutional and stuck for the list of City Ordinances.

PRAYER FOR RELIEF

Wherefore, Having stated their Causes of Action in Full, Plaintiff prays for the following relief:

COUNT ONE:    An award of damages in an amount to be proven at trial, said damages being in excess of $75,000.00 and an award of attorney fees and the costs of this action, in accordance with 42 USC 1988.

COUNT TWO:    An award of damages in an amount to be proven at trial, said damages being in excess of $75,000.00

COUNT THREE: An award of damages in an amount to be proven at trial, said damages being in excess of $75,000.00 and an award of the costs of the action, including but not limited to an award of reasonable attorney fees in accordance with 15 U.S.C. § 1, et seq.

COUNT FOUR: An award of damages in an amount to be proven at trial, said damages being in excess of $75,000.00 and an award of attorney fees and the costs of this action, in accordance with 42 USC 1988.

COUNT FIVE:    A order declaring Wickliffe City Ordinances 1161.05 and 1303.70 unconstitutional under the void for vagueness and issues an injunction preventing any enforcement or application of said ordinances, in addition to an award of the costs of the litigation, including but not limited to an award of reasonable attorney fees.

Respectfully Submitted,

_/s/ Jay F. Crook_____
Jay F. Crook (#0078499)
Jay F. Crook, Attorney at Law, LLC 30601
Euclid Avenue
Wickliffe, OH 44092
PH: 440-944-7020
FAX: 440-943-3096
EMAIL: jay.crook@euclidavelaw.com